# CIRCUIT COURT OF ROCKINGHAM COUNTY

In re Petition of
Geoffrey Kerr
for Restoration of
Competency and
Termination of Guardianship
Pursuant to § 37.1-134.16

August 24, 1998

Case No. (Chancery) 16750

BY JUDGE JOHN J. MCGRATH, JR.

Petitioner Geoffrey Kerr has filed, pursuant to the newly-enacted provisions of § 37.1-134.16 of the Code of Virginia, for restoration of his competency and termination of a guardianship previously established for him. Mr. Kerr alleges that the mental condition which was the basis on which the Circuit Court of the City of Roanoke declared him incompetent on March 30, 1981, pursuant to the then effective Code § 37.1-128.1 of the Code of Virginia has abated and asserts that he is now competent to handle his own property. The petition was served upon the two co-guardians, one of whom is a resident of Roanoke, Virginia, and one of whom is a resident of Allentown, Pennsylvania, and both of whom are children of the Petitioner.

The co-guardians have filed a Motion for Change of Venue and a Demurrer. These two motions will be taken up in order.

## I. *Change of Venue*

The co-guardians argue that not only was Mr. Kerr adjudicated an incompetent on March 30, 1981, but there have been seven subsequent proceedings in the Circuit Court for the City of Roanoke in which he has attempted and failed to have the guardianship terminated. The most recent of these hearings apparently resulted in an order of the Circuit Court of the City of Roanoke refusing to dissolve the guardianship, which order was entered in the fall of 1993.

The co-guardians argue that venue should be transferred to the City of Roanoke because one of the guardians resides there, and the attorney who has handled the previous hearings on behalf of the guardians is located in Roanoke. Also, the Guardians argue that venue is improper in this Court. The guardians argue that when a comparison is made between the previous Code Section, which governed the venue for an action to terminate a guardianship (§ 37.1-134.1) ("any person who has been adjudicated an incompetent ... may petition the circuit court of the county or city in which he resides or is located to declare him restored to competency ... .") to the current provision of the Code which simply provides in § 37.1-134.16 that "upon petition by the incapacitated person ... the court may declare the incapacitated person restored to capacity . . ." it is clear that venue only lies in the Circuit Court of the City of Roanoke. The respondents assert that this change in the statute was deliberate and was intended to require an individual who has been declared an incompetent to return to the Circuit Court in which he or she was declared incompetent for the competency to be terminated.

The parties were asked to provide any information that was available concerning the legislative history of the new § 37.1-134.16 to determine whether the legislature's deletion of the term "the circuit court of the county or city in which he resides or is located" was deliberate or was a drafting oversight.

The briefs filed by the parties indicate there is no official legislative history concerning the amendments to this section of the Code. However, each counsel submitted statements made by attorneys who served on the committee which helped draft the bill. As in many situations such as this, it is not surprising that the two attorneys have somewhat of a different take on the legislative history and why this phrase was dropped from the new statute. Therefore, it is fair to say that the legislative history, to the extent it may be gleaned from the attorneys who worked on the drafting committee for the new legislation, is ambiguous and not determinative of the outcome of this proceeding.

The Petitioner argues that the clear wording of the § 37.1-134.16 of the Code provides that a person who is under a guardianship may petition "the Court" to dissolve or modify the guardianship. Petitioner contends there is no restriction on the Court to be petitioned; and, therefore, the incapacitated person can petition the court in the circuit where he is domiciled. This Court believes that a fair reading of the current statute is that an incapacitated person can file an action to be declared competent or to modify the guardianship in either the Circuit Court where he or she was declared incompetent or in the Circuit Court where he or she resides. If the legislature intended to end the

long-established and common sense rule that an incapacitated person may petition the Court where they reside, such a significant change would have been specifically stated.

On the question of whether venue should be transferred to the Circuit Court for the City of Roanoke, the Court must balance the convenience to all of the parties and give due regard to the Petitioner's right to choose the forum in which to litigate. In the instant case, the Petitioner and his lawyer are located in Harrisonburg. In addition, the last two mental health care professionals who have dealt with the Petitioner are located in Harrisonburg. On the other hand, one of the Respondents resides in Roanoke, one resides in Pennsylvania, and the attorney for the Respondents has his office in Roanoke. All factors considered, the Court cannot see how a transfer of venue could be in the best interests of all the parties; therefore, the Court declines to transfer venue.

## II. *Demurrer*

The essence of Respondents' Demurrer is that from 1986 to 1993, Mr. Kerr sought unsuccessfully on seven occasions to have his competency restored. Respondents argue that the current Petition states no new facts, other than the statement that Petitioner has regained his competency, which was what he claimed on seven prior unsuccessful Petitions and that the earlier denials of relief are *res judicata*.

The Petitioner filed with his Petition two evaluations performed by mental health professionals, who, after administering various tests, meeting with Mr. Kerr, and reviewing his previous medical records, have concluded that he is competent and capable of handling his own financial affairs. Randy Weber, Ph. D., met with Mr. Kerr on or about January 20, 1997, and after interviewing Mr. Kerr and interpreting various physiological tests opined that:

> Mr. Kerr has the intellectual capacities to make informed financial decisions as evidenced by an I.Q. in the superior range and the ability to make reasonable financial plans .... There is, however, no evidence of a thought process difficulty that would prevent him from responsibly handling his own finances.

Dr. Showalter met with Mr. Kerr on six occasions between May 18, 1994, and March 3, 1997. Based upon these sessions and an examination of Mr. Kerr's medical and hospital records, stated:

It is the opinion of this examiner therefore that Mr. Kerr at this time is competent in all respects to make decisions relative to his own personal life, including the distribution of monies that may be made available to him.

Although neither of these medical reports have been received in evidence or subjected to cross-examination, and although Respondents have not had an opportunity to submit their expert evidence on Mr. Kerr's mental state, these reports are certainly sufficient as a matter of pleading to fairly raise the issue of whether or not Mr. Kerr's mental state has improved since the last Court hearing in 1993. Therefore, the Respondents' Demurrer is overruled.